# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PERRY ROBERT AVILA,<br><br>Plaintiff,<br><br>v.<br><br>MATTHEW CATE, et al.,<br><br>Defendants. | Case No. 1:09-cv-00918-LJO-SKO PC<br><br>ORDER (1) DISCHARGING ORDER TO SHOW CAUSE RE CONTEMPT, (2) DENYING MOTION TO MODIFY SUBPOENAS AS UNTIMELY, AND (3) REQUIRING CDCR AND CCI TO SUBMIT CERTAIN DOCUMENTS FOR *IN CAMERA* REVIEW<br><br>(Docs. 57, 62, and 63)<br><br>THIRTY-DAY DEADLINE |

## I. Background

Plaintiff Perry Robert Avila, a state prisoner proceeding pro se and in forma pauperis, filed this civil rights action pursuant to 42 U.S.C. § 1983 on May 26, 2009. This action is proceeding against Defendants Meadors, Sullivan, Jones, Gonzalez, and Peterson ("Defendants") for violation of the Equal Protection Clause of the Fourteenth Amendment. (Docs. 1, 8.) Plaintiff's claim arises out of allegedly race-based lock-downs in 2007 at California Correctional Institution ("CCI") in Tehachapi, California.

The discovery phase of this litigation concluded on January 3, 2011, with the exception of the four document production requests which have been the subject of protracted proceedings. (Docs. 16, 25.) Third parties California Department of Corrections and Rehabilitation ("CDCR") and CCI were served with subpoenas duces tecum commanding the production of documents

responsive to the four document requests. (Docs. 38, 39, 40.) CDCR and CCI's response to the subpoenas prompted Plaintiff to file a motion to compel, which the Court granted on February 1, 2013. (Docs. 51, 57.) In that order, the Court also required CDCR and CCI to show cause why they should not be held in contempt. (Doc. 57.)

CDCR and CCI then filed a motion requesting reconsideration of the order by United States District Judge Lawrence J. O'Neill, who denied the motion with prejudice on June 6, 2013. (Docs. 58, 62.)

On July 5, 2013, CDCR and CCI filed a response to the order to show cause and a motion to modify the subpoenas. (Doc. 63.) After obtaining two extensions of time, Plaintiff filed a response on November 8, 2013, and the matter has been submitted upon the record without oral argument. Local Rule 230(*l*). (Doc. 79.)

For the following reasons, the Court elects to discharge the order to show cause, deny the motion to modify the subpoenas as untimely, and require production of the disputed documents to the Court for *in camera* review. Fed. R. Civ. P. 45(c)(3)(A), (e); Fed. R. Civ. P. 26(c). The Court will then determine whether the documents should be subject to a protective order to ensure that the safety and security of staff and inmates are not compromised through the disclosure of confidential information. Fed. R. Civ. P. 26(c).

**II.   Order to Show Cause re Contempt**[1]

Pursuant to Federal Rule of Civil Procedure 45(a)(1)(D), a subpoena commanding the production of documents requires the responding party to permit inspection or copying of the materials. Following service of a subpoena duces tecum, the responding party may serve objections "before the earlier of the time specified for compliance or 14 days after the subpoena is served," and if an objection is made, the serving party may move for an order compelling production or inspection. Fed. R. Civ. P. 45(c)(2)(B). The responding party *may* be held in contempt for failing to obey the subpoena without adequate excuse. Fed. R. Civ. P. 45(e);

---

[1] CDCR and CCI addressed both criminal and civil contempt in their response, as did Plaintiff. In issuing the order to show cause, the Court contemplated only civil contempt and therefore, it does not further address the issue of criminal contempt.

2

*Pennwalt Corp. v. Durand-Wayland*, 708 F.2d 492, 494 (9th Cir. 1983).

Sanctions for civil contempt may be imposed to coerce obedience to a court order or to compensate a party for injuries resulting from the contemptuous behavior, or both.[2] *General Signal Corp. v. Donallco, Inc.*, 787 F.2d 1376, 1380 (9th Cir. 1986) (quotations marks and citations marks omitted). While "there is no good faith exception" to compliance with a court order, *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993), the entities' motivation and the steps they took to comply are nevertheless relevant in contempt proceedings, *see id*.

In this instance, the Court elects to discharge the order to show cause rather than to initiate contempt proceedings. CDCR and CCI's objections to the subpoenas were untimely and the Court previously determined that their untimely objections were waived, but CDCR and CCI did nonetheless serve objections to the subpoenas and they did undertake to respond to the subpoenas.[3] Further, although their response to the subpoenas fell sufficiently short to entitle Plaintiff to an order compelling production, the missteps in responding are at least partially, if not almost fully, attributable to the unique and challenging concerns which arise in the context of prison litigation.

It has long been recognized that safeguarding institutional security is a central objective of prison administration, and maintaining institutional safety and security presents many challenges. *E.g.*, *Bell v. Wolfish*, 441 U.S. 520, 545-46, 99 S.Ct. 1861 (1979); *Farmer v. Brennan*, 511 U.S. 825, 844-45, 114 S.Ct. 1970 (1994); *see also Griffin v. Gomez*, Nos. 09-16744, 11-15373, 2014 WL 292528, at *9-10 (9th Cir. Jan. 28, 2014) (discussing the challenges faced by prison administrators in attempting to ensure institutional safety and security in an environment of extreme violence). The Court is neither ignorant of nor insensitive to these challenges; they may *not* be used as a pretense by prison officials to refuse to engage in discovery but neither will the Court turn a blind eye to their existence. The disclosure of confidential information, depending on

---

[2] Plaintiff is proceeding pro se and in forma pauperis, and he has not borne any expense with respect to the service of the subpoenas duces tecum nor has he incurred attorney's fees or other expenses of significance.

[3] Docs. 57, 62.

3

its nature, may result in bodily injury or death to staff, other inmates, and/or individuals outside of prison, or it may result in other breaches in security. *See e.g.*, *Griffin*, 2014 WL 292528, at *4 (detailing murders carried out on the orders of an imprisoned gang leader). The Court must consider the need to balance Plaintiff's entitlement to discoverable information with countervailing safety and security concerns.

Based on the aforementioned considerations, the Court finds that while CDCR and CCI's response to the subpoenas fell short of what was required of them, given the circumstances unique to this case, it was not sufficiently inexcusable to warrant the initiation of civil contempt proceedings.

## III.    Motion to Modify Subpoenas

"On *timely* motion, the issuing court must quash or modify a subpoena that . . . requires disclosure of privileged or other protected matter, if no exception or waiver applies . . . ." Fed. R. Civ. P. 45(c)(3)(A) (emphasis added).

CDCR and CCI previously argued that the Court, in the absence of a motion, was required to modify the subpoenas. This untenable argument was rejected. CDCR and CCI now concede that their motion to modify should have been brought earlier but they seek consideration of their motion "as a matter of equity" in light of "the grave security concerns" at stake. (Doc. 63, Mtn. to Modify, p. 11 n.3.)

The subpoenas duces tecum at issue were served on December 12, 2011, and December 13, 2011. The Court expressly noted the failure to file a motion to modify or quash the subpoenas in its order filed on July 19, 2012. Despite this, CDCR and CCI did not file a motion to modify the subpoenas until July 5, 2013.

The Court can envision no set of circumstances in which a delay of almost one year and seven months would satisfy the requirement of timeliness. CDCR and CCI were aware of the subpoenas but inexplicably failed to take action; to find the motion timely under these circumstances would render the timeliness requirement entirely meaningless. *Allstate Ins. Co. v. Nassiri*, No. 2:08-CV-369 JCM (GWF), 2011 WL 4905639, at *1 (D. Nev. Oct. 14, 2011) (magistrate judge did not commit clear error in finding motion to quash or modify subpoena

Case 1:09-cv-00918-LJO-SKO   Document 80   Filed 02/06/14   Page 5 of 10

untimely where non-party had 3 week notice of deposition but filed motion 3 days before deposition); *North American Co. for Life and Health Ins. v. Philpot*, No. 08cv270 BEN (NLS), 2010 WL 4917065, *2-3 (S.D. Cal. Nov. 24, 2010) (motion to quash filed before date noticed for compliance with record subpoena was timely); *Iorio v. Life Ins. Co. of North America*, No. 05cv633 JLS (CAB), 2009 WL 3415689, at *7 (S.D. Cal. Oct. 21, 2009) (motion to quash subpoena commanding appearance at trial filed 6 weeks before trial was timely); *Anderson v. Abercrombie and Fitch Stores, Inc.*, No. 06cv991-WQH (BLM), 2007 WL 1994059, at *8 (S.D. Cal. Jul. 2, 2007) (motion to quash filed after date specified for document production was untimely); *see also Moore v. City of St. Augustine, Fla.*, No. 3:12-cv-797-J-20MCR, 2013 WL 1156384, at *1 (M.D. Fla. Mar. 14, 2013) (motion to quash filed more than 40 days after date specified for compliance was untimely). Therefore, CDCR and CCI's motion to modify the subpoenas is denied on the ground that it was not timely filed.

### IV.     Protective Order/*In Camera* Review

#### A.     Availability of Alternate Relief

The determination that CDCR and CCI's motion to modify the subpoenas was untimely and will not be considered does not end the inquiry necessarily. The Court is vested with broad discretion to manage discovery, *Hunt v. County of Orange*, 672 F.3d 606, 616 (9th Cir. 2012); *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005); *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002), and it may, for good cause, enter a protective order, Fed. R. Civ. P. 26(c). CDCR and CCI's objections to the subpoenas duces tecum were waived, their motion for reconsideration was denied, and the Court declines to revisit that issue. However, as district courts have recognized, "[d]iscovery in prisoner cases raises unique challenges," *Biscoe v. Garcia*, No. CV11-943-PHX-ROS (LOA), 2012 WL 3228820, at *1 (D. Nev. Aug. 6, 2012), and notwithstanding the waiver of CDCR and CCI's objections, where otherwise discoverable information would pose a threat to the safety and security of the prison or infringe upon a protected privacy interest, a need may arise for the Court to balance interests in determining whether disclosure should occur, *see* Fed. R. Civ. P. 26(c); *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 35 n.21, 104 S.Ct. 2199 (1984) (privacy rights or interests implicit in broad purpose and

language of Rule 26(c)); *Burlington N. & Santa Fe Ry. Co. v. United States Dist. Court for the Dist. of Montana*, 408 F.3d 1142, 1149 (9th Cir. 2005) (discussing assertion of privilege); *Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995) (recognizing a constitutionally-based right of privacy that can be raised in discovery); *see also Garcia v. Clark*, No. 1:10-CV-00447-LJO-DLB PC, 2012 WL 1232315, at *6 n.5 (E.D. Cal. Apr. 12, 2012) (noting inmate's entitlement to inspect discoverable information may be accommodated in ways which mitigate institutional safety concerns); *Robinson v. Adams*, No. 1:08-cv-01380-AWI-BAM PC, 2012 WL 912746, at *2-3 (E.D. Cal. Mar. 16, 2012) (issuing protective order regarding documents containing information which implicated the safety and security of the prison); *Orr v. Hernandez*, No. CV-08-0472-JLQ, 2012 WL 761355, at *1-2 (E.D. Cal. Mar. 7, 2012) (addressing requests for protective order and for redaction of information asserted to risk jeopardizing safety and security of inmates or the institution if released); *Womack v. Virga*, No. CIV S-11-1030 MCE EFB P, 2011 WL 6703958, at *5-6 (E.D. Cal. Dec. 21, 2011) (requiring defendants to submit withheld documents for *in camera* review or move for a protective order).

**B.     Outstanding Document Production Requests**

As previously set forth, discovery is now closed with the exception of the following four document production requests, which were limited in scope by the Court to the lockdown(s) at CCI, Facility 4A, from December 2006 through December 2007:

> Request 1: All documents that describe and refer to prison officials' decisions to place and retain California Correctional Institution, Facility 4A (CCI 4A) general population prisoners on lockdown or modified programs, including but not limited to all records of decisions reviewed, approved or disapproved by officials whose offices are located at the California Department of Corrections and Rehabilitation (CDCR) main offices at Sacramento, California, or any branch office of the CDCR.
>
> Request 2: All documents that describe or refer to the CDCR and CCI 4A procedures for initiating and maintaining a lockdown or modified program, including but not limited to all documents which list the prison officials and offices charged with the responsibility of directly overseeing and participating in decisions to place and retain general population prisoners on lockdown or modified program.
>
> Request 3: All completed documents entitled "Program Status Report."
>
> Request 4: All documents that describe or refer to Men's Advisory Council (MAC) activity, including the Secretary's notes and minutes of the "Warden's Meeting(s)" and meeting with other prison officials for the purpose of discussing that prisoner population's concerns and complaints.

(Doc. 39, Order.)

In the order filed on February 1, 2013, the Court ordered Plaintiff, CDCR and CCI to meet and confer regarding whether there are any further documents responsive to requests 1, 3, and 4, and to file status reports if they were unable to resolve their dispute over further responsive documents. (Doc. 57.) On August 5, 2013, and September 13, 2013, CDCR, CCI, and Plaintiff filed their status reports.[4] (Docs. 68, 74.)

Regarding requests 1 and 4, CDCR and CCI represent that the only other responsive document, inmate appeal CCI-0-08-0561, was produced to Plaintiff. (CDCR/CCI Stat. Rpt., 2:22-4:4.) As Plaintiff was informed in the order of February 1, 2013, Plaintiff is required to accept that representation in the absence of evidence to the contrary, which has not been presented. (Doc. 57, 7:6-9.) Neither conjecture as to the potential existence of other documents nor reluctance to accept CDCR and CCI's representation suffices to demonstrate the existence of further responsive documents.

With respect to other documents described by Plaintiff in his status report, Plaintiff is entitled *only* to those documents which are responsive to requests 1 through 4. Plaintiff is not entitled to any documents relating to the 2011 proposed rule change, documents relating to CDCR's response to *Johnson v. California*, 543 U.S. 499 (2005), or any records of settlements and/or judgments relating to cases involving lock-down practices, as none of those records fall within the purview of requests 1 through 4.[5] (Pl. Stat. Rpt., 2:19-28 & 3:10-16.) Further, request 4 contemplates minutes, notes, or other documents pertaining to MAC activity or meetings. Request 4 does not contemplate organizational procedures or rules pertaining to how MAC is set

---

[4] Plaintiff's assertion that CDCR and CCI were required to file separate status reports is incorrect. (Doc. 70, Opp., 12:1-7.) CDCR and CCI are represented by the same counsel, and they are not required to act separately in this or any other related matter in this case.

[5] Plaintiff argues in his opposition that the documents relating to the 2011 purposed regulatory changes are not subject to the scope limitation imposed by the Court, to the extent the documents "discuss, refer, and relate to the regulations concerning lock downs in place during the relevant time period. . . ." (Doc. 79, Opp., 29:19-30:21.) Plaintiff sought certain types of documents in requests 1 through 4, and those requests were limited by the Court to lock-downs at CCI, Facility 4A, from December 2006 through December 2007. The documents Plaintiff seeks clearly do not fall within the purview of requests 3 and 4, and the Court is not persuaded that comments regarding proposed regulatory changes in 2011 arguably fall within the purview of requests 1 and 2, either.

7

up, how often meetings must be held, etc. (Pl. Stat. Rpt., 4:23-25.) CDCR and CCI have represented that they produced the only documents they found which were responsive to Plaintiff's request, other than the unredacted Program Status Reports ("PSRs") and the documents which they assert will jeopardize institutional safety and security if produced, both of which are discussed below. The Court is not persuaded that the additional documents Plaintiff now identifies in his status report fall within the purview of requests 1 through 4 and further disclosure will not be ordered.

With respect to request 2, CDCR and CCI assert that the disclosure of these documents will jeopardize prison safety and security. (Doc. 63, Mtn. to Modify, 3:17-20; Doc. 58-1, Mtn. for Recon., Becker Dec., ¶13; Doc. 79, Opp., 11:1-19.) CDCR and CCI shall submit any responsive documents directly to the Court for *in camera* review within thirty days.[6]

Finally, with respect to request 3, CDCR and CCI shall submit the unredacted PSRs directly to the Court for *in camera* review within thirty days.[7] CDCR and CCI have informed Plaintiff that the individuals responsible for implementing the lock-downs signed the PSRs and that the Director's approval is required only for state-wide lock-downs and there were no state-wide lock-downs during the relevant time period. (CDCR/CCI Stat. Rpt., 3:3-7 & 3:24-28; Pl. Stat. Rpt., 2:24-25 & 4:18-22.) Plaintiff is required to accept that response and only the redacted portions of the PSRs which were produced remain at issue.

In summary, the discovery disputes now left at issue are limited to: (1) those documents responsive to request 2 which CDCR and CCI represent pose a risk to institutional safety and security and (2) the unredacted PSRs responsive to request 3, which may also pose a risk to institutional safety and security. Those documents shall be produced to the Court for *in camera* review within thirty days.[8] CDCR and CCI may either e-mail the documents to

---

[6] Documents pertaining to searches need not be produced. (Pl. Stat. Rpt., 4:8-14.) Plaintiff seeks documents relating to the implementation, maintenance, and termination of lock-downs where race was a factor. (*Id.*)

[7] CDCR and CCI maintain that they redacted only the information that would reveal the identities of confidential informants while Plaintiff maintains that the redactions were broader in scope. (Doc. 63, Mtn. to Modify, 3:17-20; Doc 58-1, Mtn. for Recon., Becker Dec., ¶13; Doc. 79, Opp., 8:23-9:4.)

[8] CDCR and CCI need not also submit the redacted PSRs, as those are already part of the record. (Doc. 58-4, Mtn. for Recon., Becker Dec., Ex. A.)

skoorders@caed.uscourts.gov or mail them directly the Chambers of the undersigned, marked "Confidential." In no event will the Court release the documents to Plaintiff without first notifying CDCR, CCI, and the parties of its decision and permitting a response. In the event that the Court requires further briefing on the issue, it will notify CDCR, CCI, and the parties via written order.

## V.     Sanctions

Finally, Plaintiff argues that the Court should, under its inherent authority, assess monetary sanctions against CDCR and CCI, payable to Plaintiff and the Court, and deny Defendants' pending motion for summary judgment.

Federal courts have the inherent authority to sanction conduct abusive of the judicial process. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-45, 111 S.Ct. 2123 (1991). However, because of their very potency, inherent powers must be exercised with restraint and discretion. *Chambers*, 501 U.S. at 44 (quotation marks omitted). To be sanctionable under the Court's inherent power, the conduct must have constituted, or have been tantamount to, bad faith. *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 767, 100 S.Ct. 2455 (1980); *Gomez v. Vernon*, 255 F.3d 1118, 1134 (9th Cir. 2001); *Fink v. Gomez*, 239 F.3d 989, 993-94 (9th Cir. 2001). Recklessness, when combined with an additional factor such as frivolousness, harassment, or an improper purpose, may support sanctions, *Vernon*, 255 F.3d at 1134; *Fink*, 239 F.3d at 994, but mere negligence or recklessness will not suffice, *In re Lehtinen*, 564 F.3d 1052, 1058 (9th Cir. 2009).

As both the undersigned and District Judge O'Neill have made clear in previous orders, the litigation tactics employed by Defendants, CDCR, and CCI during the discovery phase of this litigation were unsatisfactory. These tactics have not only substantially delayed these proceedings, but also needlessly wasted this Court's resources, and the Court attributes this litigation strategy to Defendants' counsel, who also represented CDCR and CCI until July 5, 2013.[9] However, there is simply no evidence that CDCR and CCI, or their then-counsel, acted in bad faith, and the Court

---

[9] CDCR and CCI now have different counsel.

declines to consider sanctions under its inherent authority.[10]

## VI. Order

For the reasons set forth above, the Court HEREBY ORDERS as follows:

1. The order to show cause re civil contempt, filed on February 1, 2013, is DISCHARGED;

2. CDCR and CCI's motion to modify the subpoenas, filed on July 5, 2013, is DENIED as untimely;

3. Within **thirty (30) days** from the date of service of this order, CDCR and CCI shall submit documents responsive to request 2 and the unredacted PSRs responsive to request 3 directly to the Court for *in camera* review; and

4. Plaintiff's request for sanctions is DENIED.

IT IS SO ORDERED.

Dated:   **February 5, 2014**                    **/s/ Sheila K. Oberto**
                                                          UNITED STATES MAGISTRATE JUDGE

---

[10] The Court notes that Defendants are not involved in the current discovery dispute and there is no basis for denying their motion for summary judgment as a sanction against them, as Plaintiff requests.