# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PERRY ROBERT AVILA,<br><br>    Plaintiff,<br><br>    v.<br><br>MATTHEW CATE, et al.,<br><br>    Defendants.<br>_____/ | Case No. 1:09-cv-00918-LJO-SKO (PC)<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BE DENIED<br><br>(Doc. 22)<br><br>OBJECTION DEADLINE: FIFTEEN DAYS<br>RESPONSE DEADLINE: FIFTEEN DAYS |

**I.  Background**

    Plaintiff Perry Robert Avila ("Plaintiff"), a state prisoner proceeding pro se and in forma pauperis, filed this civil rights action pursuant to 42 U.S.C. § 1983 on May 26, 2009. This action is proceeding against Defendants Sullivan, Gonzalez, Meadors, Jones, and Peterson ("Defendants") for violation of the Equal Protection Clause of the Fourteenth Amendment. (Docs. 1, 8.) Plaintiff's claim arises out of allegedly race-based lock-downs in 2007 at California Correctional Institution ("CCI") in Tehachapi, California.

    Defendants filed a motion for summary judgment on March 7, 2011, seeking judgment on the merits and on the ground of qualified immunity. (Doc. 22.) Plaintiff was granted a continuance pursuant to Rule 56(d) and after a protracted discovery phase, he filed his opposition

on July 27, 2015.[1] Fed. R. Civ. P. 56(d). (Doc. 100.) Defendants filed their reply and objections on August 18, 2015, and their motion has been submitted on the record without oral argument. Local Rule 230(*l*). (Docs. 104, 105.) For the reasons that follow, the Court finds that Defendants have not met their initial burden as the moving parties and it recommends that their motion be denied.

## II.    Summary Judgment Standard

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); *Washington Mut. Inc. v. U.S.*, 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, although it is not required to do so. Fed. R. Civ. P. 56(c)(3); *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001); *accord Simmons v. Navajo Cnty., Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010).

Defendants do not bear the burden of proof at trial and in moving for summary judgment, they need only prove an absence of evidence to support Plaintiff's case. *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986)). If Defendants meet their initial burden, the burden then shifts to Plaintiff "to designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle Corp.*, 627 F.3d at 387 (citing *Celotex Corp.*, 477 U.S. at 323). This requires Plaintiff to "show

---

[1] Defendants neglected to serve Plaintiff with a *Rand* notice. *Woods v. Carey*, 684 F.3d 934, 939-41 (9th Cir. 2012); *Rand v. Rowland*, 154 F.3d 952, 960-61 (9th Cir. 1998). The Court notes that Plaintiff's opposition is thorough and competent. Regardless, given the Court's determination that Defendants failed to meet their initial burden on summary judgment, the Court declines to further delay this case for the purpose of curing a deficiency that is ultimately immaterial. *See Labatad v. Corrs. Corp. of America*, 714 F.3d 1155, 1159-60 (9th Cir. 2013).

more than the mere existence of a scintilla of evidence." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505 (1986)).

However, in judging the evidence at the summary judgment stage, the Court may not make credibility determinations or weigh conflicting evidence, *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted). The Court determines *only* whether there is a genuine issue for trial and in doing so, it must liberally construe Plaintiff's filings because he is a pro se prisoner. *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010) (quotation marks and citations omitted).

**III.     Discussion**

    **A.     Plaintiff's Equal Protection Claims**

        **1.     Legal Standard Governing Race-Based Prison Classifications**

At issue in this action are three lock-downs, or modified programs, which affected Hispanic inmates on Facility IV at CCI.[2]  Plaintiff alleges that the lock-downs, which were initiated in response to disturbances or threats at CCI, were based on race and violated the Equal Protection Clause's mandate that persons who are similarly situated be treated alike. *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439, 105 S.Ct. 3249 (1985); *Hartmann v. California Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1123 (9th Cir. 2013); *Furnace v. Sullivan*, 705 F.3d 1021, 1030 (9th Cir. 2013); *Shakur v. Schriro*, 514 F.3d 878, 891 (9th Cir. 2008).

Express racial classifications such as those at issue in this case are immediately suspect and are subject to strict scrutiny, with the government bearing the burden of proving that the classification was narrowly tailored to serve a compelling government interest. *Johnson v. California*, 543 U.S. 499, 505, 125 S.Ct. 1141 (2005) (citing *Adarand Constructors, Inc., v. Pena*, 515 U.S. 200, 227, 115 S.Ct. 2097 (1995)) (quotation marks omitted). Alleged racial violence in the prison setting is no shield from the strict scrutiny standard, *Johnson*, 543 U.S. at 507, and

---

[2] The terms lock-down and modified program are used interchangeably.

prison officials are not entitled to broad deference as to the requirement that classifications be narrowly tailored, *Harrington v. Scribner*, 785 F.3d 1299, 1308 (9th Cir. 2015). Rather, "[t]he necessities of prison security and discipline are a compelling government interest justifying only those uses of race that are narrowly tailored to address those necessities." *Harrington*, 785 F.3d at 1308 (citing *Johnson*, 543 U.S. at 512) (internal quotation marks omitted). "Such interests properly inform whether there exists a compelling interest, but they do not excuse the narrow tailoring requirement." *Id.* When an express racial classification is challenged, prison officials must "show that reasonable men and women could not differ regarding the necessity of a racial classification in response to a prison disturbance and that the racial classification was the least restrictive alternative (i.e., that any race-based policies are narrowly tailored to legitimate prison goals)." *Richardson v. Runnels*, 594 F.3d 666, 671 (9th Cir. 2010). Therefore, for Defendants to meet their initial burden in this case, they must show that the decisions to keep all Hispanic inmates locked down on Facility IVA were narrowly tailored to address the specific security threats that led to the lock-downs. *Richardson*, 594 F.3d at 671-72.

## 2. **Defendants' Statement of Facts**[3]

Defendants argue that the three lock-downs at issue began as general modified programs and were narrowed to Hispanic inmates after correctional staff determined that only Hispanic inmates were involved and either posed or faced a potential security risk. In support of their motion, Defendants offer the following facts.

### a. **First Modified Program – December 5, 2006**

Facility IVA at CCI houses security level IV inmates, and level IV inmates are the most violent and dangerous inmates housed within the California Department of Corrections and Rehabilitation ("CDCR"). On December 5, 2006, several Hispanic inmates battered another Hispanic inmate with an inmate-manufactured weapon on the Facility IVA recreation yard. While recalling the recreation yard, a second Hispanic inmate was found with injuries consistent with

---

[3] Because Defendants bear the initial burden of production and the Court determines herein that they did not meet that burden, the Court does not reach which of these specific facts have been brought into dispute by Plaintiff.

4

being a victim of a battery. Correctional staff subsequently conducted a search of the yard and found several inmate-manufactured weapons.

A large scale inmate assault followed by the discovery of several inmate-manufactured weapons caused great concern to Defendant Sullivan, the Warden at CCI, because it meant that further attacks could follow, and that the safety and security of the inmates and staff were in great danger.[4] Defendant Sullivan placed Facility IVA on a modified program that day, and except for medical and legal necessities, all inmates were restricted to their cells so that staff could investigate the cause of the violent incident and determine whether a greater security threat to inmates or staff existed.

On January 2, 2007, it was determined through staff investigations that only Hispanic inmates were involved in the December 5, 2006, incident. Because no other races were involved, Defendant Sullivan released non-Hispanic inmates from the modified program. However, because a potential threat to Hispanic inmates and staff still existed, Defendant Sullivan kept Hispanic inmates on modified program. This allowed staff to focus their investigation on Hispanic inmates so that they could resolve any potential safety issues effectively and in a timely fashion.

### b.     **Second Modified Program – May 21, 2007**

On May 21, 2007, staff received an anonymous note in the institutional mail indicating that inmates were planning to attack staff. That day, Defendant Gonzalez, who was Acting Warden at CCI, placed all inmates in Facility IVA on modified program, which resulted in their confinement to their cells. Correctional staff immediately began conducting cell searches and interviews to determine the validity of the threat against staff.

By June 25, 2007, staff investigations had revealed that the threat only applied to Hispanic inmates and any inmates known to associate with the Southern Hispanic prison gang. Defendant Gonzalez subsequently ended the modified program except for all non-Hispanic inmates and those inmates known to associate with the Southern Hispanic prison gang, enabling correctional staff to

---

[4] Plaintiff disputes that the incident was a "large scale inmate assault," and the specific facts set forth in the relevant memoranda and Program Status Report undercut Defendant Sullivan's description of this event as "large scale."

efficiently and effectively focus their investigation efforts on finding the source of the threat and a likelihood of a continuing threat to inmates and staff.

### c. Third Modified Program – August 4, 2007

On August 4, 2007, an attempted murder took place on the Facility IVA yard. Due to the seriousness of the incident, Defendant Sullivan placed all Facility IVA inmates on modified program so that staff could investigate the incident further. On August 13, 2007, staff investigations revealed that only Hispanics were involved in the attempted murder.

An attempted murder by one race against the same race was of great concern to Defendant Sullivan because it indicated the existence of a potential power struggle among that inmate group, or that the victim was targeted to be attacked by the leader of that race and more attacks were imminent. Attempted murders by one race against the same race often lead to further attacks. Correctional staff therefore needed to isolate and focus their investigation efforts on Hispanic inmates to properly determine if any further threat to Hispanic inmates or to the institution existed. Because no other races were involved, Defendant Sullivan released non-Hispanic inmates from the modified program.

### 3. Findings

To meet their initial burden on summary judgment, Defendants must show that the lock-downs of all Hispanic inmates on Facility IVA were narrowly tailored to further compelling government interests. There is no question that restoring and maintaining institutional safety and security in the face of violence or threats are compelling government interests, *Harrington*, 785 F.3d at 1308 (citing *Johnson*, 543 U.S. at 512), but the decision to keep Hispanic inmates locked down after the release of other races must have been necessary and the least restrictive means of preserving or maintaining institutional security, *Richardson*, 594 F.3d at 671. Consistent with the Supreme Court's admonition in *Johnson* regarding narrow tailoring, the Ninth Circuit has flatly rejected the lock-down of one race based on the actions of a few inmates of that race, in the absence of evidence demonstrating the existence of a risk posed by all members of that race. *Richardson*, 594 F.3d at 671-72.

///

#### a. Modified Program Initiated on December 5, 2006

The modified program that began on December 5, 2006, was the result of an attack on one inmate and during the course of recalling the yard, a second inmate was discovered to have injuries consistent with being a victim of a battery. (Doc. 22-3, Sullivan Decl., ¶¶2, 3, Ex. A.) The modified program was subsequently ended for non-Hispanic inmates on or around January 2, 2007. (*Id.*, Sullivan Decl., ¶¶12, 13, Ex. A.) Defendants do not provide evidence of when the modified program ended for Hispanic inmates, but it continued for some period of time beyond January 2, 2007, despite the determination that there was "no information to indicate that other Hispanic inmates on Unit IVA may be planning future attacks."[5] (*Id.*)

Defendant Sullivan attested that he kept Hispanic inmates on modified program because a potential threat still existed and the modified program allowed prison officials to focus their investigation on Hispanic inmates. This is precisely the sort of broad race-based justification, however, that runs afoul of the Equal Protection Clause. The months-long lock-down of all Hispanic inmates following an incident involving approximately six inmates cannot be justified by reliance on vague, general statements regarding a potential threat involving Hispanic inmates.[6] *Richardson*, 594 F.3d at 671-72. Even more problematic, the Program Status Report ("PSR") contradicts the continued existence of any threat posed by Hispanic inmates. Accordingly, the Court finds that Defendants failed to meet their burden of demonstrating that the race-based lock-down of only Hispanic inmates was narrowly tailored to address any continuing security threat posed by the initial battery incident on December 5, 2006. *Id.*

#### b. Modified Program Initiated on May 21, 2007

Next, on May 21, 2007, staff received an anonymous note in the institutional mail identifying inmates as planning to assault staff. (Gonzalez Decl., ¶3, Ex. C.) Defendant Gonzalez placed Facility IVA on modified program, and several weapons were recovered. (*Id.*, ¶4, Ex. C.) By June 25, 2007, staff determined that the threat applied to Hispanic inmates and any inmates

---

[5] Plaintiff's evidence indicates that the modified program ended on or around February 20, 2007. (Doc. 100, Opp., Ex. 1, p. 50.)

[6] Plaintiff submitted a memorandum dated December 7, 2006, that described the incident in more detail and Defendants agree that as many as six inmates were involved. (Doc. 100, Ex. 1, p. 39; Doc. 105, Def. Obj., p. 2.)

7

1  known to associate with the Southern Hispanic prison gang. (*Id.*, Gonzalez Decl., ¶6.) Although,
2  Defendants did not provide evidence of when the modified program ended, Plaintiff's evidence
3  includes a PSR dated August 8, 2007, in which Defendant Sullivan noted that a "methodical return
4  to normal program began on 07-26-07" and he recommended that the modified program beginning
5  on May 21, 2007, be closed. (Doc. 100, Ex. 3, p. 83.) In the PSR, Defendant Sullivan noted that
6  the last evidence that a threat against staff existed was on June 23, 2007, and the involved inmates
7  had been placed in administrative segregation. (*Id*.)

8        The discovery of a plot to assault correctional officers is a serious threat to institutional
9  safety and security, but the receipt of a note that specifically identified the seven inmates involved
10 in the plot, and which led to the apparent and immediate identification of eleven involved inmates,
11 cannot be used to justify the months-long modified program affecting all Hispanic inmates and
12 inmates associated with Southern Hispanics.[7] *Richardson*, 594 F.3d at 671-72. To the extent
13 there may have been more detailed reasoning underlying the lock-down of all Hispanic inmates, it
14 has not been provided and the Court finds that Defendants failed to meet their initial burden as to
15 the May 21, 2007, modified program. *Id.*

16       **c.    Modified Program Initiated on August 4, 2007**

17       Finally, on August 4, 2007, an attempted murder occurred on the yard involving Hispanic
18 inmates. (Sullivan Decl., ¶18, Ex. B.) Prison officials found no information indicating plans for a
19 future attack by Hispanic inmates, and as of August 16, 2007, black, white, and "other" inmates
20 were returned to normal program and Defendant Sullivan ordered a gradual return to normal
21 program for Hispanic inmates. (*Id.*) Defendants did not address when the modified program
22 ended for Hispanic inmates but it appears to have been mid-September 2007. (Doc. 100, Ex. 4, p.
23 100.)

24       Defendants again failed to meet their burden as the parties moving for summary judgment.
25 The attempted murder of an inmate is a serious matter but Defendants must produce evidence that
26 the lock-down of Hispanic inmates over the course of approximately six weeks was narrowly
27
28 _____
[7] (Doc. 100, Ex. 3, pp. 68-9.)

8

tailored to address a specific threat to institutional safety and security. *Richardson*, 594 F.3d at 671-72. They have not done so. *Id.*

### B. Linkage Deficiency as to Claims Against Defendants Meadors, Jones, and Peterson

Notwithstanding Defendants' failure to meet their initial burden as to the merits of Plaintiff's equal protection claims, the lack of a link, or causal connection, between each defendant's actions or omissions and the alleged violation of Plaintiff's federal rights is fatal to his claims. *Lemire v. California Dep't of Corr. and Rehab.*, 726 F.3d 1062, 1074-75 (9th Cir. 2013); *Starr v. Baca*, 652 F.3d 1202, 1205-08 (9th Cir. 2011). Defendants Meadors, Jones, and Peterson move for summary judgment on the ground that as lieutenants in Facility IVA during the relevant time period, they were not responsible for beginning, ending or altering a modified program.

Plaintiff does not dispute that Defendants Meadors, Jones, and Peterson were lieutenants, but he contends that while PSRs require the warden's approval, they are prepared by the lieutenants, who are involved in the decision making process and in the actions taken. Plaintiff contends that Defendants Meadors, Jones, and Peterson all signed PSRs and/or threat assessment memoranda, and they were participants in the modified program decisions.

In response, Defendants argue that their involvement in investigating security threats and reporting to the warden about them, or in preparing the PSRs, does not make them responsible for the warden's final decision to modify programs.

Just as supervisors may not avoid liability for actions of which they were aware but did not directly participate in and bystanders may not avoid liability for actions they witnessed but did not directly participate in, subordinate staff members may not necessarily avoid liability simply because they were not the final decision makers. *Starr*, 652 F.3d at 1205-08; *Simmons*, 609 F.3d at 1020-21; *Motley v. Parks*, 383 F.3d 1058, 1071 (9th Cir. 2004); *Lolli v. Cnty. of Orange*, 351 F.3d 410, 418 (9th Cir. 2003); *Robins v. Meecham*, 60 F.3d 1436, 1442 (9th Cir. 1995). Section 1983 provides redress for the violation of federal rights and the inquiry focuses on the presence or absence of a connection between the violation and each named individual, title notwithstanding. *Simmons*, 609 F.3d at 1020-21. Here, although Defendants Meadors, Jones, and Peterson were not

9

the final official decision makers in terms of having the authority to provide final approval by signature, they were involved in the process and not merely peripherally so. Defendants were involved in the underlying investigation, in making recommendations, and in preparing the PSRs for signature; and the fact that they did not have the final signing approval is not a shield against liability for their role in the process that resulted in the race-based lock-downs of Hispanic inmates.[8] Accordingly, the Court finds that Defendants Meadors, Jones, and Peterson are not entitled to judgment on the ground that there is no causal connection between their actions and the violation of Plaintiff's right to equal protection.

### C. Qualified Immunity

Finally, Defendants move for judgment on qualified immunity grounds. Qualified immunity is "immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Mueller v. Auker*, 576 F.3d 979, 993 (9th Cir. 2009) (citation and internal quotations omitted). Qualified immunity shields government officials from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727 (1982). "Qualified immunity balances two important interests - the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably," *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S.Ct. 808 (2009), and it protects "all but the plainly incompetent or those who knowingly violate the law," *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092 (1986).

In resolving the claim of qualified immunity, the Court must determine whether, taken in the light most favorable to Plaintiff, Defendants' conduct violated a constitutional right, and if so, whether the right was clearly established. *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151 (2001); *Mueller*, 576 F.3d at 993. While often beneficial to address in that order, the Court has discretion to address the two-step inquiry in the order it deems most suitable under the

---

[8] Given the PSRs and memoranda bearing Defendants Meadors, Jones, and Peterson's signatures, contained in Plaintiff's Exhibits 1, 3, and 4, any argument to the contrary lacks merit.

circumstances. *Pearson*, 555 U.S. at 236 (overruling holding in *Saucier* that the two-step inquiry must be conducted in that order, and the second step is reached only if the court first finds a constitutional violation); *Mueller*, 576 F.3d at 993-94.

### 1. **Constitutional Violation**

The constitutional right at issue in this case is the right to be free from discrimination based on race, *Johnson*, 543 U.S. at 509-15; *Richardson*, 594 F.3d at 671, and there is no dispute that the lock-downs at issue affected Hispanic inmates based on their race. Defendants argue that they did not violate Plaintiff's constitutional rights because they have shown that their actions were narrowly tailored to address a compelling government interest. This argument fails, however, because Defendant did not meet their initial burden of producing evidence demonstrating that the lock-down of Hispanic inmates was narrowly tailored to address the specific security threats they faced on December 5, 2006, May 21, 2007, and August 4, 2007. *Richardson*, 594 F.3d at 671. Decisions affecting all Hispanic inmates on Facility IVA cannot be justified under the Equal Protection Clause on the basis of the actions by a few, and that is all Defendants have shown. *Id.* Given Plaintiff's right to be free from being treated differently than other similarly situated inmates based on his race, the need for race-based classifications to be analyzed under the strict scrutiny standard, and Defendants' failure to produce evidence that the race-based classification was narrowly tailored to the threat faced, Plaintiff has shown a violation of his rights under the Equal Protection Clause. *Id.*

### 2. **Clearly Established Right**

Next, "[f]or a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable officer would understand that what he is doing violates that right." *Hope v. Pelzer*, 536 U.S. 730, 739, 122 S.Ct. 2508 (2002). While the reasonableness inquiry may not be undertaken as a broad, general proposition, neither is official action entitled to protection "unless the very action in question has previously been held unlawful." *Hope*, 536 U. S. at 739. "Specificity only requires that the unlawfulness be apparent under preexisting law," *Clement v. Gomez,* 298 F.3d 898, 906 (9th Cir. 2002) (citation omitted), and prison personnel "can still be on notice that their conduct violates established law even in novel factual circumstances," *Hope*, 536

11

U.S. at 741.  Nor does the existence of material factual disputes necessarily preclude a finding of qualified immunity.  *Estate of Ford*, 301 F.3d at 1053.  "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions," *Ashcroft v. al-Kidd*, __ U.S. __, __, 131 S.Ct. 2074, 2085 (2011).

In February 2005, the United States Supreme Court issued its decision in *Johnson v. California*, a case that involved an equal protection challenge to a race-based CDCR policy.  Citing a 1995 case, the Supreme Court reiterated its prior holding that "*all* racial classifications" are subject to strict scrutiny, and the government must prove that any racial classification is "narrowly tailored measures that further compelling governmental interests."  *Johnson*, 543 U.S. at 505 (citing *Adarand Constructors, Inc.*, 515 U.S. at 227) (emphasis in original).  The Supreme Court expressly rejected CDCR's argument that the deferential *Turner* standard should apply to prison polices.[9]  *Johnson*, 543 U.S. at 509-15.  The Supreme Court issued this decision almost two years before the first modified program at issue in this case, and any argument that the law was not sufficiently clear to place reasonable prison officials on notice that the Equal Protection Clause required that race-based policies or decisions be narrowly tailored to further a compelling government interest is untenable.  In as much as Defendants have not produced evidence demonstrating that the race-based lock-downs of all Hispanic inmates were narrowly tailored to address the security threats that gave rise to the initial lock-downs of Facility IVA, the Court finds that Defendants are not entitled to qualified immunity based on the evidence presented by Defendants.

**IV.     Recommendation**

Based on the foregoing, the Court finds that Defendants failed to meet their burden as the parties moving for summary judgment and it HEREBY RECOMMENDS that their motion for summary judgment, filed on March 7, 2011, be DENIED.

///

---

[9] Under the *Turner* test, an impingement on an inmate's constitutional rights will be upheld "'if it is reasonably related to legitimate penological interests.'"  *Shakur*, 514 F.3d at 884-85 (quoting *Turner v. Safley*, 482 U.S. 78, 89, 107 S.Ct. 2254 (1987)).

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within **fifteen (15) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court.  Local Rule 304(b).  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Responses, if any, are due within **fifteen (15) days** from the date the objections are filed.  Local Rule 304(d).  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **November 20, 2015**                       /s/ Sheila K. Oberto
                                                  UNITED STATES MAGISTRATE JUDGE