1
2
3
4
5
6

# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

8

| | |
|---|---|
| PERRY ROBERT AVILA, | Case No.  1:09-cv-00918-LJO-SKO (PC) |
| Plaintiff, | ORDER WITHDRAWING FINDINGS AND RECOMMENDATIONS DATED NOVEMBER 23, 2015 |
| v. | |
| MATTHEW CATE, et al., | (Doc. 106) |
| Defendants. | FINDINGS AND RECOMMENDATIONS THAT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BE GRANTED |
| | (Doc. 22) |
| | OBJECTION DEADLINE: FIFTEEN DAYS |
| _____/ | |

18

## **INTRODUCTION**

19

**A.    Background**

20

Plaintiff, Perry Robert Avila, a state prisoner proceeding *pro se* and *in forma pauperis*,

filed this civil rights action pursuant to 42 U.S.C. § 1983 on May 26, 2009.  This action is

proceeding against Defendants Sullivan, Gonzalez, Meadors, Jones, and Peterson for violation of

the Equal Protection Clause of the Fourteenth Amendment.  (Docs. 1, 8.)  Plaintiff's claim arises

from race-based lockdowns in 2006, and 2007, at California Correctional Institution ("CCI") in

Tehachapi, California.

Defendants filed a motion for summary judgment on March 7, 2011, seeking judgment on

the merits and on the ground of qualified immunity.  (Doc. 22.)  Plaintiff was granted a

1  continuance pursuant to Rule 56(d) and after a protracted discovery phase, he filed his opposition

2  on July 27, 2015.[1]  Fed. R. Civ. P. 56(d).  (Doc. 100.)  Defendants filed their reply and objections

3  on August 18, 2015, and the motion was deemed submitted on the record without oral argument.

4  Local Rule 230(*l*).  (Docs. 104, 105.)

5  On November 23, 2015, the Court issued Findings and Recommendations ("the F&R") to

6  deny Defendants' motion finding they had not met their burden and were not entitled to qualified

7  immunity on Plaintiff's claims.  (Doc. 106.)  The F&R allowed for the filing of objections and a

8  response.  (*Id.*)  On December 3, 2015, Defendants filed objections to which Plaintiff responded.

9  (Docs. 108, 111.)

10  In light of *Mullenix v. Luna* , --- U.S. ---, 136 S.Ct. 305 (2015), the F&R that issued on

11  November 23, 2015, (Doc. 106), is withdrawn and new findings and recommendations are set

12  forth below finding that Defendants are entitled to qualified immunity and recommending that the

13  motion be GRANTED.

14  **LEGAL STANDARDS**

15  **A.    Summary Judgment Standard**

16  Any party may move for summary judgment which shall be granted if the movant shows

17  there is no genuine dispute as to any material fact and is entitled to judgment as a matter of law.

18  Fed. R. Civ. P. 56(a) (quotation marks omitted); *Washington Mut. Inc. v. U.S.*, 636 F.3d 1207,

19  1216 (9th Cir. 2011).  Each party's position, whether it be that a fact is disputed or undisputed,

20  must be supported by (1) citing to particular parts of materials in the record, including but not

21  limited to depositions, documents, declarations, or discovery; or (2) showing that the materials

22  cited do not establish the presence or absence of a genuine dispute or that the opposing party

23  cannot produce admissible evidence to support the fact.  Fed. R. Civ. P. 56(c)(1) (quotation marks

24  omitted).  The Court may consider other materials in the record not cited to by the parties,

25

26  [1] Defendants neglected to serve Plaintiff with a *Rand* notice.  *Woods v. Carey*, 684 F.3d 934, 939-41 (9th Cir. 2012);

27  *Rand v. Rowland*, 154 F.3d 952, 960-61 (9th Cir. 1998).  The Court notes that Plaintiff's opposition is thorough and competent.  Regardless, given the Court's determination that Defendants are entitled to qualified immunity on the legal issue that the right asserted was not clearly established in the face of institutional safety and security concerns at

28  the time of the events in question, there is no need for further delay to cure a deficiency that is ultimately immaterial. *See Labatad v. Corrs. Corp. of America*, 714 F.3d 1155, 1159-60 (9th Cir. 2013).

2

although it is not required to do so.  Fed. R. Civ. P. 56(c)(3); *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001); *accord Simmons v. Navajo Cnty., Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010).

Defendants do not bear the burden of proof at trial and in moving for summary judgment, they need only prove an absence of evidence to support Plaintiff's case.  *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986)).  If Defendants meet their initial burden, the burden then shifts to Plaintiff "to designate specific facts demonstrating the existence of genuine issues for trial."  *In re Oracle Corp.*, 627 F.3d at 387 (citing *Celotex Corp.*, 477 U.S. at 323).  This requires Plaintiff to "show more than the mere existence of a scintilla of evidence."  *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505 (1986)).

In judging the evidence at the summary judgment stage, the Court may not make credibility determinations or weigh conflicting evidence.  *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).  All inferences must be drawn in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment.  *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 942 (9th Cir. 2011).  The Court determines only whether there is a genuine issue for trial and in doing so, it must liberally construe Plaintiff's filings because he is a *pro se* prisoner.  *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010).

## B.    Qualified Immunity Standard

Defendants moved for summary judgment on the merits of Plaintiff's allegations and assert that they are entitled to qualified immunity.  "Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct."  *Taylor v. Barkes*, --- U.S. ---, 135 S.Ct. 2042, 2044 (June 1, 2015) quoting *Reichle v. Howards*, --- U. S. ---, 132 S.Ct. 2088, 2092 (2012).  The qualified immunity analysis requires two prongs of inquiry:  "(1) whether 'the facts alleged show the official's conduct violated a constitutional right; and (2) if so, whether the right was clearly established' as of the date of the involved events 'in light of the specific context of the

1  case.'" *Tarabochia v. Adkins*, 766 F.3d 1115, 1121 (9th Cir. 2014) quoting *Robinson v. York*, 566

2  F.3d 817, 821 (9th Cir. 2009); *see also Pauluk v. Savage* , --- F.3d. ---, 2016 WL 4598287, *8 (9th

3  Cir. Sept. 8, 2016).  These prongs need not be addressed in any particular order.  *Pearson v.*

4  *Callahan*, 555 U.S. 223, 129 S.Ct. 808 (2009).

5      To determine whether a government official should be granted qualified immunity, under

6  the first prong, the facts are to be viewed "in the light most favorable to the injured party."

7  *Chappell v. Mandeville*, 706 F.3d 1052, 1058 (9th Cir. 2013) quoting *Saucier v. Katz*, 533 U.S.

8  194, 201, 121 S.Ct. 2151 (2001), *receded from on other grounds by Pearson*, 355 U.S. at 817-21;

9  *see also Bryan v. MacPherson*, 630 F.3d 805, 817 (9th Cir. 2010).  However, the existence of a

10 material factual dispute does not necessarily preclude a finding of qualified immunity.  *Estate of*

11 *Ford v. Ramirez-Palmer*, 301 F.3d 1043, 1053 (9th Cir. 2002).

12     Under the second prong, clearly established law is not to be defined "at a high level of

13 generality." *Mullenix v. Luna*, --- U.S. ---, 136 S. Ct. 305, 308 (2015) quoting *Ashcroft v. al-Kidd,*

14 563 U.S. 731, 742, 131 S.Ct. 2074 (2011).  "The dispositive question is 'whether the violative

15 nature of *particular* conduct is clearly established.' " *Ibid.* (emphasis added in *Mullinex*).  "This

16 inquiry must be undertaken in light of the specific context of the case, not as a broad general

17 proposition." *Id.*, quoting *Brosseau v. Haugen*, 543 U.S. 194, 198, 125 S.Ct. 596 (2004) (per

18 curiam) (quoting *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151 (2001)) (internal quotations

19 omitted).  "The relevant inquiry is whether existing precedent placed the conclusion that [the

20 defendant] acted unreasonably in the [specific circumstances confronted] 'beyond debate.' " *Id.*,

21 at 309 quoting *al–Kidd,* at 741.

22     "To be clearly established, a right must be sufficiently clear that every reasonable official

23 would have understood that what he is doing violates that right." *Reichel*, 132 S.Ct. at 2092; *see*

24 *also Castro v. County of Los Angeles,* --- F.3d ---, 2016 WL 4268955, *4 (9th Cir. Aug. 15, 2016).

25 "When properly applied, [qualified immunity] protects all but the plainly incompetent or those

26 who knowingly violate the law." *al-Kidd*, 563 U.S. at 743 (citation and internal quotation marks

27 omitted).  "We do not require a case directly on point, but existing precedent must have placed the

28 statutory or constitutional question beyond debate." *Id.*, at 741.  "[A] 'robust consensus of cases

4

1  of persuasive authority' " in the Courts of Appeals *could* establish the federal right [in question]."

2  *City and County of San Francisco v. Sheehan,* --- U. S. ---, 135 S.Ct. 1541, 1778 (2015) (slip op.,

3  at 16) (emphasis added) (word choice of "could" (i.e. possibility) by the Court noteworthy and

4  distinguishable from a finding that a "robust consensus" of appellate court decisions "*would*" or

5  "*shall*" (i.e. definitive) establish the existence of a federal right).

6  **DISCUSSION**

7  **A.      Factual Basis for Plaintiff's Equal Protection Claim**

8  **1.      Plaintiff's Allegations in the Complaint**

9  Plaintiff, who is Hispanic, contends his rights under the Equal Protection Clause of the

10  Fourteenth Amendment were violated when prison officials placed Hispanic inmates on race-

11  based lockdowns[2] at CCI in 2006, and 2007.  (Docs. 1, Comp., pp. 20, 32-34; Doc. 8, Screen Ord.,

12  pp. 2-4.)  Plaintiff's claim was found cognizable on allegations based on three lockdowns.

13  **2.      Facts and Disputes[3]**

14  **a.      Modified Program Initiated on December 5, 2006**

15  Defendants contend that, on December 5, 2006, several Hispanic inmates battered another

16  Hispanic inmate with an inmate-manufactured weapon battery on the CCI Facility 4A recreation

17  yard.  (Fact 1.)  While recalling the recreation yard, a second Hispanic inmate was found with

18  injuries consistent with being a battery victim.  (Fact 2.)  Following a search of the yard,

19  correctional staff found several inmate-manufactured weapons.  (Fact 3.)

20  Facility 4A houses security level four inmates.  (Fact 4.)  Level four inmates are the most

21  violent and dangerous inmates housed at the California Department of Corrections and

22  Rehabilitation ("CDCR").  (Fact 5.)  A large scale inmate assault followed by the discovery of

23  several inmate-manufactured weapons caused Defendant Warden Sullivan great concern because

24  it meant that further attacks could follow and that the safety and security of the inmates and staff

25

26  [2] The terms "lockdown" and "modified program" are used interchangeably.

27  [3] The facts at issue and in dispute are generally restated here, not for the purpose of discerning whether a triable issue of material fact exists on the merits of Plaintiff's claim, but to provide the factual basis for Plaintiff's claims to ascertain whether "existing precedent" . . . "placed the statutory or constitutional question beyond debate."  *al-Kidd,*

28  563 U.S. at 741.

was in great danger.  (Fact 6.)  Sullivan promptly placed Facility 4A on a modified program restricting all inmates to their cells, except for medical and legal necessities, so staff could conduct investigations to determine the cause of the violent incident and determine whether a larger security threat to inmates or staff existed.  (Fact 7.)

On January 2, 2007, staff investigations determined that only Hispanic inmates were involved in the December 5, 2006, incident.  (Fact 8.)  Because no other races were involved, Sullivan released non-Hispanic inmates from the modified program.  (Fact 9.)  Since a potential threat for Hispanic inmates and staff still existed, Sullivan kept Hispanic inmates on modified program.  (Fact 10.)  This allowed staff to focus their investigation on Hispanic inmates so they could effectively resolve any potential safety issues.  (Fact 11.)

Plaintiff's evidence reveals that during the December 5, 2006 altercation, two inmates attacked a third inmate, which prison staff witnessed and the subsequent search of the yard discovered three inmate manufactured weapons.  (Avila Dec. ¶¶ 1, 2, 3.)  Plaintiff disputes Defendants' classification of the matter as a "large scale" incident and asserts that there was no legitimate basis for the "great concern" asserted by Sullivan.  (*Id.*, at ¶6.)  Plaintiff disputes that other races in 4A were locked-down to facilitate searches and investigation and argues that Defendants presumed that only Hispanic inmates were involved in this incident and never intended to keep non-Hispanic inmates on lockdown.  (*Id.*, at ¶¶ 7, 9, 10, 11.)  Although inmates of other races were released, Hispanic inmates were not fully released from lockdown until approximately February 20, 2007.  (*Id.*, Ex. 1, p. 50.)

### b.      Modified Program Initiated on May 21, 2007

Defendants contend that on May 21, 2007, staff received an anonymous note in the institutional mail indicating that inmates were planning to attack staff.  (Fact 12.)  Defendant Gonzalez, acting Warden at CCI, promptly placed all inmates in Facility 4A on modified program which confined inmates to their cells.  (Fact 13.)  Correctional staff immediately began conducting cell searches and interviews to determine the validity of the threat against staff.  (Fact 14.)

By June 25, 2007, correctional staff determined that the threat was limited to Facility 4A Hispanic inmates and any inmates known to associate with the Southern Hispanic prison gang.

6

(Fact 15.)  Gonzalez subsequently ended the modified program for all non-Hispanic inmates and those inmates known to associate with the Southern Hispanic prison gang so that correctional staff could focus their investigation on uncovering the specific threat posed to staff.  (Fact 16.)

Plaintiff opposes Defendants' explanation for locking-down Hispanic inmates after the anonymous note was received on May 21, 2007, and submitted evidence that the note identified eleven inmates by their aliases.  (Avila Dec. ¶ 11.)  Plaintiff argues that, because the eleven inmates were easily identified and placed in Administrative Segregation, there was no justification to lockdown any other inmates.  (Doc. 100, pp. 3-4.)  Although the threat had dissipated and other races were released to normal program on June 21, 2007, Hispanic inmates remained on lockdown.  (*Id*., p. 4, Avila Dec. ¶¶ 9-14.)

### c.       Modified Program Initiated on August 4, 2007

Defendants contend that on August 4, 2007, an attempted murder took place on Facility 4A yard.  (Fact 17.)  Due to the severity of the incident, Sullivan placed all Facility 4A inmates on modified program so that staff could investigate the incident further.  (Fact 18.)  On August 13, 2007, staff investigations revealed that only Hispanics were involved in the attempted murder. (Fact 19.)  An attempted murder by one race against the same race was of great concern to Sullivan because it indicated a potential power struggle among that inmate group, or that the victim was a target of an attack by the leader of that race and more attacks were imminent.  (Fact 20.)  Attempted murders by one race against the same race often lead to further attacks.  (Fact 21.) Correctional staff therefore needed to isolate and focus their investigation efforts on Hispanic inmates to properly determine if any further threat to Hispanic inmates or to the institution existed. (Fact 22.)  Because no other races were involved, Sullivan released non-Hispanic inmates from the modified program.  (Fact 23.)

Plaintiff does not dispute that an attempted murder occurred on August 4, 2007, involving Hispanic inmates.  (Doc. 100, p. 4.)  Prison officials decided that non-Hispanic inmates would be allowed to return to normal programming upon completion of searches and interviews, which Plaintiff argues ruled out the involvement of inmates of other races and was entirely possible.  (*Id*., pp. 4-5, Avila Dec., ¶¶ 16-18.)  As early as August 16, 2007, prison officials noted that there was

7

1   no information to indicate any future assaults had been planned, but that Hispanics were retained

2   on lockdown.  (*Id.*, p. 4, Avila Dec. ¶¶ 9, 16.)

3          Since the second prong of the qualified immunity analysis is dispositive, the Court declines

4   to rule on the sufficiency of Plaintiff's opposing evidence and arguments.  *See Estate of Ford*, 301

5   F.3d at 1053 (existence of a material factual dispute does not preclude a finding of qualified

6   immunity).

7          **B.     In 2007, Plaintiff's Rights Under the Equal Protection Clause Were *Not*
                   *Clearly Established Regarding Race-Based Lockdowns for Safety and*
8                  ***Security Purposes***

9          The Equal Protection Clause mandates that persons who are similarly situated be treated

10  alike.  *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439, 105 S.Ct. 3249 (1985);

11  *Hartmann v. California Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1123 (9th Cir. 2013); *Furnace v.*

12  *Sullivan*, 705 F.3d 1021, 1030 (9th Cir. 2013); *Shakur v. Schriro*, 514 F.3d 878, 891 (9th Cir.

13  2008).  Express racial classifications have always been immediately suspect and subject to strict

14  scrutiny, with the government bearing the burden of proving that any such classification was

15  narrowly tailored to serve a compelling government interest.  *Johnson v. California*, 543 U.S. 499,

16  505, 125 S.Ct. 1141 (2005) (citing *Adarand Constructors, Inc., v. Pena*, 515 U.S. 200, 227, 115

17  S.Ct. 2097 (1995)) (quotation marks omitted).  The F&R rejected Defendants' argument that the

18  deferential *Turner* standard[4] should apply to prison policies and found that Defendants had not

19  produced evidence demonstrating that the race-based lockdowns of all Hispanic inmates were

20  narrowly tailored to address the security threats that gave rise to the initial lockdowns of Facility

21  4A.  (Doc. 106, pp. 11-12.)  The F&R relied on the broad application of strict scrutiny standards to

22  race-based classifications espoused in *Johnson* and extended it to this case based on the 2002

23  Supreme Court ruling in *Hope v. Pelzer*, 536 U.S. 730, 122 S.Ct. 2508 (2002).  (*Id.*, quoting *Hope*

24  at 739, "prison personnel 'can still be on notice that their conduct violates established law even in

25  novel factual circumstances.'")  Defendants' request for qualified immunity was denied on the

26

27  ─────────────────
    [4] Under the *Turner* test, an impingement on an inmate's constitutional rights will be upheld "'if it is reasonably related
28  to legitimate penological interests.'"  *Shakur*, 514 F.3d at 884-85 (quoting *Turner v. Safley*, 482 U.S. 78, 89, 107 S.Ct.
    2254 (1987)).

1    general premise that race-based classifications are subject to strict scrutiny.

2          In November of 2015, however, the Supreme Court stated that clearly established law for

3    qualified immunity analysis is not to be defined "at a high level of generality." *Mullenix v. Luna*, -

4    -- U.S. ---, 136 S. Ct. 305, 308 (2015) quoting *Al-Kidd, supra*, at 742, 131 S.Ct. 2074.  "The

5    dispositive question is 'whether the violative nature of *particular* conduct is clearly established.' "

6    *Ibid.* (emphasis added in *Mullinex*).  The Supreme Court clarified that "[t]his inquiry must be

7    undertaken in light of the specific context of the case, not as a broad general proposition."  *Id.*,

8    quoting *Brosseau v. Haugen*, 543 U.S. 194, 198, 125 S.Ct. 596 (2004) (per curiam ) (quoting

9    *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151 (2001)) (internal quotations omitted).  "The

10   relevant inquiry is whether existing precedent placed the conclusion that [the defendant] acted

11   unreasonably in the [specific circumstances confronted] 'beyond debate.' "  *Id.*, at 309 quoting *al–*

12   *Kidd, supra*, at 741, 131 S.Ct. 2074.  Thus, Defendants' request for qualified immunity should be

13   reviewed based on the law on issues of safety and security race-based lockdowns in the face of the

14   violent altercations that existed in 2006-2007.

15                      **1.      Legal Authority Prior to 2006-2007**

16         In the 2004 *Walker v. Gomez* decision, the Ninth Circuit determined that it had not been

17   clearly established that "race-based differentiation is unconstitutional in the context of a prison-

18   wide lockdown instituted in response to gang- or race-based violence," entitling the defendants to

19   qualified immunity.  *Walker v. Gomez*, 370 F.3d 969, 977-78 (9th Cir. 2004).  Following the

20   *Walker* decision, courts continued to find that race-based classifications in the face of prison

21   violence did not violate a "clearly established" right.  *See e.g. Parker v. Kramer*, No. CVF-

22   025117-AWI-DLB (PC), 2005 WL 2089802, at *6 (E.D. Cal. Aug. 29, 2005), *adopted by Parker*

23   *v. Kramer*, No. CVF-025117-AWI-DLB (PC), 2005 WL 2405917 (E.D. Cal. Sept. 27, 2005)

24   (temporary racial segregation for security purposes satisfies strict scrutiny).

25         In 2005, the Supreme Court held in *Johnson* that race-based classification and housing of

26   inmates upon intake, in the absence of specific violent altercations, violated the Equal Protection

27   Clause.[5] 543 U.S. at 505.  The *Johnson* decision would not have informed reasonable officials in

28
_____
[5] In *Johnson*, prisoners were unilaterally segregated by race upon arrival at the prison.

1    2006 and 2007 that race-based lockdowns following specific acts of violence violated the Equal

2    Protection Clause because the race-based classifications in *Johnson* were based on general

3    concerns of race-based violence and not on specific incidents of precipitating violence.[6]

4            In 2006 and 2007, district courts continued to find race-based security measures in light of

5    violence to be narrowly tailored to meet a compelling government interest.  *See e.g. Hurd v.*

6    *Garcia*, 454 F. Supp. 2d 1032, 1052-53 (S.D. Cal. Sept. 28, 2006) *aff'd,* 471 Fed.Appx. 798 (9th

7    Cir. 2012) (race-based security measure of keeping all inmates of one race on lockdown narrowly

8    tailored and implemented to resolve the compelling government interest of restoring prison

9    security and discipline); *Williams v. Pliler* (E.D. Cal., Jan. 9, 2007) 2007 WL 81914 report and

10   recommendation adopted, (E.D. Cal., Mar. 20, 2007) 2007 WL 869022 (relying on *Walker* and

11   finding that issue of race-based differentiation in the context of prison-wide lockdowns instituted

12   because of gang/race-based violence is not clearly decided).

13           None of these cases provided authority for finding a violation of the Equal Protection

14   Clause "beyond debate" under the circumstances of this case as of 2006 and 2007.  *al-Kidd*, 563

15   U.S. at 741.  To the contrary, these rulings found that race-based safety and security measures,

16   similar to those at issue here, were narrowly tailored to meet a compelling government interest.

17                      **2.       Legal Authority After 2007**

18           Subsequent to 2007, district courts continued to find race-based program modifications in

19   light of violence narrowly tailored to meet a compelling government interest.  *See Corona v.*

20   *Harrington* (E.D. Cal., Jan. 20, 2010) 2010 WL 318555 appeal dismissed, (9th Cir. 2011) 423

21   Fed.Appx. 695;  *Larry v. Tilton*, No. 1:09-cv-0950-JLS (WVG), 2011 WL 4501396, *10-14 (S.D.

22   Cal. Mar. 3, 2011), *adopted by Larry v. Tilton*, No. 09-cv-0950-JLS (WVG), 2011 WL 4501378,

23   *4 (S.D. Cal. Sept. 28, 2011) (modified program affecting one racial group did not violate equal

24   protection); *LaBranch v. Yates*, No. 1:09-cv-00048-AWI-JLT (PC), 2012 WL 3838380, at *10-12

25   (E.D. Cal. Sept. 4, 2012), *adopted by LaBranch v. Yates*, No. 1:09-cv-00048-AWI-JLT (PC) (E.D.

26   Cal. Mar. 26, 2013) ("The programming changes described by Defendants for this lockdown

27

28   _____
     [6] Notably, *Johnson* observed, "Strict scrutiny does not preclude the ability of prison officials to address the compelling
     interest in prison safety."  543 U.S. at 514-15.

amply demonstrate that the race-based security measures complained of by Plaintiff were narrowly tailored and were implemented to resolve the compelling government interest of restoring prison security and discipline."); *Anderson v. Marin*, No. 1:09-cv-01547-LJO-GBC (PC), 2012 WL 6697781, at *10-12 (E.D. Cal. Dec. 21, 2012), *adopted by Anderson v. Marin*, No. 1:09-cv-01547-LJO-GBC (PC), 2013 WL 474389, at *1 (E.D. Cal. Feb. 7, 2013) (modified program affecting one racial group did not violate equal protection); *Martinez v. Allison*, No. 1:11-cv-00293-LJO-DLB (PC), 2014 WL 1102704, at *16-17 (E.D. Cal. Mar. 14, 2014), *adoption confirmed in Martinez v. Allison*, No. 1:11-cv-00293-LJO-DLB (PC), 2014 WL 4661101 (E.D. Cal. Sept. 18, 2014) (modified program affecting Hispanic inmates was narrowly tailored to achieve safety and security).

In 2010, the Ninth Circuit held that when an express racial classification is challenged, prison officials must "show that reasonable men and women could not differ regarding the necessity of a racial classification in response to a prison disturbance and that the racial classification was the least restrictive alternative (i.e., that any race-based policies are narrowly tailored to legitimate prison goals)." *Richardson v. Runnels*, 594 F.3d 666, 671 (9th Cir. 2010). *Richardson* is factually distinguishable as each of the five lockdowns were based on isolated incidents of violence, some were precipitated by conduct of inmates of other races, and only one or two African-American inmates were involved in precipitating events involving African-American inmates.[7]  Here, the pertinent lockdown events were precipitated by incidents that suggested the involvement of a number of inmates who were only of Hispanic descent.  The Ninth Circuit in *Richardson* also held that the defense did not meet its burden on summary judgment because aside from race, they provided *no evidentiary basis* for locking-down African-American inmates.  594 F.3d at 671.  Even if *Richardson* was factually similar, the ruling in *Richardson* did not issue until 2010 -- three years after the events in issue in this action occurred.  Thus, it could

---

[7] The precipitating violent incidents in *Richardson* were as follows: an African-American inmate attacked an officer; two African-American inmates attacked an officer; an African-American inmate attacked two officers and a second African-American inmate was found to be a conspirator even though there was no evidence of tension between African-American inmate groups; an incident which involved only Hispanic inmates (after which an African-American disruptive group and all associates inexplicably remained on extended lockdown); and an incident where two Caucasian inmates fought with each other and two African-American inmates fought with each other.  *Id.*

1   not possibly have provided notice to Defendants that "beyond debate," their actions in violated

2   Plaintiff's clearly established rights in 2006, and 2007.  *Mullinex*, at 309; *al-Kidd*, at 741.

3        In 2012, the Supreme Court held that although strict scrutiny applies to race-based

4   classifications, any review for qualified immunity purposes must be tempered by whether

5   reasonable officials would have understood that the decisions violated the Equal Protection

6   Clause.  *Reichel*, 132 S.Ct. at 2092.  In 2015, the Ninth Circuit clarified that although prison

7   officials are entitled to broad deference on other claims that involve safety and security issues,

8   they are not entitled to the same deference when racial classifications are used.  *Harrington v.*

9   *Scribner*, 785 F.3d 1299, 1308 (9th Cir. 2015).  The Ninth Circuit noted the 2005 Supreme Court

10  ruling in *Johnson* that, "[t]he necessities of prison security and discipline are a compelling

11  government interest justifying only those uses of race that are narrowly tailored to address those

12  necessities." *Id.*, (citing *Johnson*, 543 U.S. at 512) (internal quotation marks omitted).  "Such

13  interests properly inform whether there exists a compelling interest, but they do not excuse the

14  narrow tailoring requirement." *Id.*  This demonstrates that although race-based classifications

15  undoubtedly violate the Equal Protection Clause, the parameters for review of such actions,

16  particularly in the prison setting in response to violent altercations, continue to evolve.

17       **3.**     **Findings**

18       It cannot be said that, in 2006 and 2007, every reasonable official faced with violent events

19  at CCI which involved multiple Hispanic inmates "would have understood that" locking down all

20  Hispanic inmates in Facility 4A until investigations were completed and gradually releasing to

21  normal programming, violated Plaintiff's rights under the Equal Protection Clause.  *Reichel*, 132

22  S.Ct. at 2092; *Castro,* at *4.  The programming changes described by Defendants for the

23  lockdowns demonstrate that the race-based security measures noted by Plaintiff were implemented

24  to resolve the compelling government interest of restoring prison security and discipline.  *See*

25  *Johnson,* 543 U.S. at 512, citing *Lee v. Washington,* 88 S.Ct. 994**.**

26       In his response to Defendants' objections to the F&R, Plaintiff cites *Mitchell, et al. v. Cate*

27  *et al.*, E.D. Cal. No. 2:08-cv-01196-TLN-EFB (Doc. 317), and contends it supports the denial of

28  Defendants' request for qualified immunity.  However, while *Mitchell* found that prison officials

1   were not entitled to qualified immunity, it is distinguishable.   In *Mitchell*, the defense contended

2   only that a constitutional violation did not occur (the first prong of the qualified immunity

3   analysis); it did not prove the absence of a constitutional violation and failed to make any showing

4   of clearly established law at the time of the relevant incidents to address the second prong.  *Id.,*

5   Doc. 317, at 26:7-28:7.  *Mitchell* also did not decide any issues pertaining to inmates' rights under

6   the Equal Protection Clause when race-based security measures are imposed following violent

7   altercations -- let alone find that any law was clearly established.

8          In sum, Defendants are entitled to qualified immunity because in 2006, and 2007, when the

9   events at issue occurred, they had no "fair and clear warning of what the Constitution requires"

10  under the circumstances they encountered.  *Mullinex*, at 309; *al-Kidd*, at 741.  Because the second

11  prong of the qualified immunity analysis is dispositive, the Court need not decide whether

12  Plaintiff's rights were violated by the race based lockdowns at CCI in 2006, and 2007.

13                                          **CONCLUSION**

14      **A.      Order**

15          In light of the foregoing, it is HEREBY ORDERED that the Findings and

16  Recommendations that issued on November 23, 2015, (Doc. 106), are **WITHDRAWN**.

17      **B.      Recommendation**

18          The Court finds that Defendants are entitled to qualified immunity on Plaintiff's claim

19  under the Equal Protection Clause and HEREBY RECOMMENDS that their motion for summary

20  judgment, filed on March 7, 2011, be **GRANTED**.

21          These Findings and Recommendations will be submitted to the United States District

22  Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within

23  **fifteen (15) days** after being served with these Findings and Recommendations, the parties may

24  file written objections with the Court.  Local Rule 304(b).  The document should be captioned

25  "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that

26  //

27  //

28  //

failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **September 9, 2016**                           /s/ *Sheila K. Oberto*
                                                         UNITED STATES MAGISTRATE JUDGE